UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGETTA SYKES,

        Plaintiff,

v.                                      Case No. 1:04-CV-567
                                        Hon. David W. McKeague

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

                                    /

**REPORT AND RECOMMENDATION**

Plaintiff, proceeding *pro se*,[1] brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI).[2] For the reasons stated below, the court concludes that plaintiff's claim should be reversed and remanded.

Plaintiff was born on October 7, 1954, completed three years of college and obtained a certificate from Davenport College (AR 65, 92, 281).[3] Plaintiff stated that she became disabled on January 2, 2002 (AR 65). Plaintiff had previous employment as a cashier in a store (AR 87).

---

[1] The court's review of the record indicates that the ALJ questioned plaintiff about her decision to proceed without an attorney or representative and that plaintiff knowingly chose to represent herself at the administrative hearing (AR 275-78). The ALJ noted that plaintiff's pastor accompanied her and testified on plaintiff's behalf (AR 275-78, 304-06).

[2] The federal court's standard of review for supplemental security income cases "mirrors" the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991).

[3] Citations to the administrative record will be referenced as (AR "page #").

Plaintiff identified her disabling conditions as congestive heart failure, shortness of breath, tiredness, swollen feet, depression and seizures (AR 18, 86, 289). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on January 9, 2004 (AR 17-26). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).

Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. *Id.* (citing 20 C.F.R. §§ 404.1520(b) and 416.920(b)(2000)). Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." *Id.* (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)(2000)). Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled. *Abbott*, 905 F.2d at 923.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. Following the five steps, the ALJ initially found that plaintiff had not engaged in substantial gainful activity since the alleged onset of disability (AR 25). Second, the ALJ found that she suffered from severe impairments of seizures, uncontrolled hypertension, hypokalemia, chronic renal insufficiency, multiple uterine fibroids and obesity (AR 19, 25). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 25). The ALJ decided at the fourth step that plaintiff had " a maximum residual functional capacity for light work subject to the need for work only on level surfaces, away from hazardous machinery" (AR 25). The ALJ further concluded that plaintiff was unable to perform her past relevant work (AR 25).

At the fifth step, the ALJ determined that plaintiff was capable of performing a significant range of light work (AR 25). Specifically, the ALJ found that an individual with plaintiff's limitations could perform the following jobs in Michigan: assembler (38,000 jobs); hand

packer (7,000 jobs); and production inspector (5,300 jobs) (AR 25). The ALJ also found plaintiff's allegations regarding her limitations were not totally credible (AR 25). Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 25-26).

### III. ANALYSIS

#### A. Plaintiff's failure to prosecute her claim

As an initial matter, defendant seeks dismissal of plaintiff's claim for failure to prosecute her claim. Plaintiff has failed to file a brief in support of her claim, contrary to this court's order directing filing of briefs. Plaintiff's failure to comply with the court's order and to prosecute this matter would be sufficient grounds for this court to enter an order to show cause why the case should not be dismissed pursuant to W.D. Mich. LCivR 41.1. However, in light of the fact that defendant filed her brief in a timely manner and set forth arguments in favor of affirming the ALJ's decision, the court did not find it appropriate to file an order to show cause. Plaintiff has had an adequate opportunity to respond to the matters raised in defendant's brief. Accordingly, the court will address the merits of plaintiff's claim.

#### B. ALJ failed to develop the medical record

"Under 42 U.S.C. § 405(g), the ALJ's findings are conclusive if the findings are supported by substantial evidence." *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). This court's review is limited to determining whether substantial evidence in the record support these findings. *Id.* The ALJ followed the five step sequential evaluation. At steps one and two, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset of disability and that she suffered from severe impairments (AR 25). At step three, the ALJ found that plaintiff's

impairments did not meet or equal a listed impairment (AR 25). The ALJ's decision at this step is supported by the findings as set forth in the state agency physician's residual functional capacity assessment (AR 23, 226-33).

At step four, the ALJ determined that plaintiff had the residual functional capacity (RFC) to perform significant range of light work (AR 25). RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 404.1545. RFC is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs" on a regular and continuing basis. 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c); *See Cohen v. Secretary of Health and Human Servs.*, 964 F.2d 524, 530 (6th Cir. 1992). Here, the ALJ found that plaintiff could perform light work, which is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b) and 416.967(b).

The ALJ stated that the RFC finding was supported by both the residual functional capacity assessment prepared by the state agency physician and objective medical opinions of plaintiff's treating and examining physicians (AR 18-24). The state agency physician determined

that plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk for about 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, had unlimited ability to push and/or pull, and had postural limitations which limited her to occasionally climbing ramps or stairs and never climbing ladders, ropes or scaffolds (AR 227-28). The state agency physician also found that plaintiff's hypertension had responded to medication, that her seizures were stable despite her non-compliance with medication and that her overall heart function was satisfactory (AR 231).

The state agency physician's assessment is supported by some of the medical records of plaintiff's treating physicians. An echocardiogram performed in November 2003 indicated that plaintiff had normal heart function (AR 20, 254). In addition, plaintiff's treating physicians were concerned that she did not comply with her medication regimen for her seizure disorder and hypertension (AR 240-55). For example, in January 2002, plaintiff admitted to her physician, Dr. Fuller, that she had not had a seizure in a "long time" and that she quit taking seizure medication two or three years prior to that date (AR 21, 199). Plaintiff's failure to take her prescribed medication would prevent her from receiving benefits. *See* 20 C.F.R. §§ 404.1530(a); 416.930(a) ("In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work"). Defendant points out that in May 2002, Dr. Fuller found that plaintiff's seizures were stable and that it was "OK to return to work" (AR 183-84).

However, it appears to the court that the ALJ did not fully develop the medical record with respect to plaintiff's seizures. Plaintiff appeared before the ALJ without counsel. The ALJ has a "special duty" to develop the administrative record and ensure a fair hearing for claimants, such as plaintiff, that are unrepresented by counsel. *See Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986); *Lashley v. Secretary of Health and Human Servs.*, 708 F.2d 1048,

1051-52 (6th Cir. 1983) (ALJ must scrupulously and conscientiously explore all the relevant facts when adjudicating claims brought by unrepresented claimant).

At the hearing, the ALJ obtained a copy of the referral to E. Eugene Wiley, M.D., a neurologist, scheduled for December 12, 2003, three days after the administrative hearing (AR 244, 279). At the hearing, the ALJ stated that he was going to go "line by line through this medical record and try to make the right decision" (AR 312). The ALJ also stated that "if I have to go out and get more medical evidence for you, I will do that . . . but right now I've got to take the matter under advisement and figure out what the right thing is to do" (AR 312). The ALJ took no further steps to develop the medical record and denied plaintiff's claim on January 9, 2004 (AR 17-26).

Plaintiff submitted a March 5, 2004 letter from the doctor to the Appeals Council (AR 272). In this letter, Dr. Wiley stated that he has been "following" plaintiff for her seizures since March 20, 2000, re-evaluated her on December 15, 2003 and saw her for a follow-up examination on February 25, 2004 (AR 272).[4] Dr. Wiley stated that plaintiff suffers from grand mal seizures which require ongoing treatment with epilepsy medication (AR 272). He observed that plaintiff's blood pressure was not well controlled and that "[f]rom a neurologic point of view, her major difficulty is memory trouble, tiredness, sedation, fatigue and just some basic thinking trouble," which the doctor believes "is related to her anti-epilepsy medication as well as the multitude of medications she is on for blood pressure" (AR 272). The doctor noted that plaintiff currently takes Dilantin, Hydralazine, Furosemide, Spironalactone, Doxazosin, Tarka, Coreg and Catapres (AR 272). Based on plaintiff's medications, blood pressure and ongoing seizure problem, the doctor did not believe

---

[4] Although plaintiff was originally scheduled to visit Dr. Wiley on December 12, 2003, it appears that the doctor did not examine her until December 15th (AR 244, 272).

"it is reasonable to expect her to function in any type of work on a daily basis for the usual work day and be effective" (AR 272). Dr. Wiley's letter that he has treated plaintiff for seizures from March 2000 through February 2004 and that, in his opinion, she has a serious neurological problem.

The court has several concerns with the matters set forth in this letter. First, while the letter suggests that Dr. Wiley treated plaintiff for seizures since March 2000, the ALJ did not refer to any treatment by this physician. Second, the record reflects that Dr. Fuller referred plaintiff to Dr. Wiley on November 7, 2003, approximately one month before her administrative hearing (AR 244). Such a referral appears to be part of plaintiff's ongoing treatment for her seizures. Third, Dr. Wiley's records are relevant to plaintiff's claim. The doctor examined plaintiff on December 15, 2003 (six days after her administrative hearing) and again on February 24, 2004 (about 1 1/2 months after the ALJ issued his decision). His treatment notes would present a current evaluation of plaintiff's condition. Fourth, the ALJ acknowledged receipt of the referral to Dr. Wiley, stated to plaintiff that he would carefully examine the medical record and might obtain more medical evidence. However, the ALJ took no action to obtain any medical records from Dr. Wiley. Under these circumstances, the court concludes that the ALJ had a "special duty" to obtain Dr. Wiley's records before issuing his decision.

Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should obtain Dr. Wiley's treatment records of plaintiff and re-evaluate her claim.

**IV.     Recommendation**

I respectfully recommend that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) consistent with this report and recommendation.

Dated:  July 5, 2005                                             /s/ Hugh W. Brenneman, Jr.
                                                                         Hugh W. Brenneman, Jr.
                                                                         United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).